IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2007 SEP 11 P 12: 31
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT

| | |
|---|---|
| REVELL MCGHEE,          ) | |
| )                       | |
| Plaintiff,              ) | |
| )                       | Case No. 2:07-cv-817-MEF |
| v.                      ) | |
| )                       | JURY DEMAND |
| AMERICOLD LOGISTICS,    ) | |
| )                       | |
| Defendant.              ) | |

## COMPLAINT

**COMES NOW** Revell McGhee (Plaintiff), and for his complaint against Americold Logistics and its agents and representatives (Defendant) hereby complains as set forth herein below.

### JURISDICTION

1. This Court has jurisdiction over the litigation herein pursuant to 28 U.S.C. Sections 1331 and 1343, 42 U.S.C., and Section 2000e.

2. Plaintiff has fulfilled all conditions precedent to the institution of this action.

### VENUE

3. Defendant is located and/or doing business within this judicial district (Middle District and the Northern Division of Alabama). This action is brought within the judicial district wherein the unlawful employment practices were committed, making venue proper under 42 U.S.C. Section 2000(e)-5(f) (3) and 28 U.S.C. Section 1391(b).

## PARTIES

4. Plaintiff Revell McGhee, hereinafter referred to as "Plaintiff," is an African-American male resident of the United States, residing in Montgomery County, Alabama. Plaintiff is a resident of this judicial district, and has been employed by Defendant at all times material hereto. Plaintiff is a member of the protected class for race within the meaning of Title VII. Plaintiff is also an employee of Defendant within the meaning of Title VII.

5. Defendant, Americold Logistics, hereinafter referred to as "Defendant" is a private entity and is authorized to do business in the State of Alabama, and employs at least fifteen (15) persons and otherwise meets the jurisdictional prerequisites of Title VII.

## NATURE OF THE CASE

6. This is a lawsuit brought by Plaintiff seeking permanent relief from unlawful discriminating practices by Defendant. Plaintiff has been adversely affected by discrimination involving termination, promotion, assignments and other terms and conditions of employment as a result of Defendant failing to remedy systemic employment discrimination on the basis of race. The practices committed by Defendant violate Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, et seq. ("Title VII").

2

## FACTUAL BACKGROUND

7. Plaintiff first began working for Defendant on or about November 21, 1996, as a forklift operator. About a year and a half later, Plaintiff was promoted to lead person. Approximately two and a half years later, Plaintiff was promoted to night shift supervisor. Plaintiff assumed Billy Bedford's (white/male) position. Billy Bedford was promoted to day supervisor.

8. Throughout Plaintiff's tenure at Americold, Plaintiff was a victim of disparate treatment. For example, as night supervisor, Billy Bedford was allowed to perform evaluations for pay raises for his crew. Plaintiff was not allowed to evaluate his crew once he became shift supervisor. Plaintiff was made to give his evaluations to Gary Denton (white/male), operations manager. Billy Bedford received extensive computer training, whereas Plaintiff only received a cursory review of the computer system. This lack of training made Plaintiff's job difficult. Bedford was allowed to call the "temp" service to fill positions when he needed help. However, Plaintiff was not allowed to call the "temp" service.

9. Plaintiff was not allowed to use the restroom that white supervisors used. Plaintiff was made to use the restroom that non-supervisory employees used. Plaintiff was also treated differently than Bedford and other white supervisors with the use of scanning equipment. The scanning equipment was often hidden from Plaintiff.

3

10. When Plaintiff worked in the position of lead person, he worked under the supervision of Billy Bedford. Since supervisors are salaried employees, Bedford was allowed to leave after eight (8) hours. Plaintiff would have to cover for Bedford as lead person. However, once Plaintiff became a supervisor, he was not allowed to leave after eight (8) hours. Plaintiff had to work overtime. In fact, Plaintiff was not initially given a lead person. Once Plaintiff did receive a lead person, the lead person was not made to fill in for Plaintiff after he had worked his eight (8) hours.

11. Bedford and other supervisors were allowed to use the conference room for consultations with employees and such. Plaintiff was not allowed to use the conference room. After Plaintiff became night shift supervisor, the conference room began to be locked at night. Plaintiff did not have a key to the conference room. The only difference between Plaintiff and Bedford is Plaintiff's race, black.

12. Bedford and Dennis both became ill in 2005. It has been Americold's practice to promote the night supervisor to day shift if a vacancy became available. It was apparent that Kirk Forehand (white/male) did not want a black day shift supervisor. It was made apparent to Plaintiff that he had climbed as far as he could as a black male.

13. Nikia Smith (black/female) was hired through a temporary service around May of 2005. Ms. Smith had ninety (90) days to earn a

permanent position at Americold. Ms. Smith worked directly with Plaintiff. By August 2005, Ms. Smith's had not earned a permanent position. Plaintiff supervised Ms. Smith. Plaintiff experienced attitude problems with Ms. Smith. As a result, Plaintiff experienced difficulty supervising Ms. Smith. Plaintiff reported the difficulty he was experiencing to management. In particular, Plaintiff reported these problems to Mr. Forehand, Mr. Denton and Ms. Wilma Price. Ms. Smith was ultimately terminated by Wilma Price (white/female). Ms. Smith was instructed not to return to Americold. Plaintiff was instructed to not allow Ms. Smith to return to the premises. Plaintiff was further instructed to call the police if he had problems with Ms. Smith.

14. On November 22, 2005, Ms. Smith returned to the workplace. Plaintiff asked Ms. Smith to leave the premises, because he had been instructed to not allow her to return to Americold. This did not set well with Ms. Smith. Ms. Smith refused to leave. Instead, Ms. Smith took an object from her car and hit Plaintiff. Plaintiff called the police to assist him with the matter. At that time, Ms. Smith made an attempt to get another object. By this time Demerti Kelly (black/male), put Ms. Smith back into her car using force. When the police arrived, Mr. Kelly and Ms. Smith had left the premises.

15. Plaintiff made a police report regarding Ms. Smith on this same date. Ms. Smith also filed a complaint against Plaintiff. A short

time after the altercation Plaintiff was terminated. Plaintiff is baffled that the reason given to him for being terminated was the altercation between him and Ms. Smith, since he was strictly following the instructions of management. On the other hand, when white employees – Roland Spivey and Ashley Overstreet – got into a fight involving a knife, these individuals were not terminated, they were simply verbally counseled. Yet, Plaintiff was terminated for carrying out the instructions of Americold. Plaintiff was replaced by a white male, Scott. After a careful consideration of his termination and due to the past disparate treatment that Plaintiff was subjected to, Plaintiff is led to believe that the real reason Americold terminated him was race discrimination.

## COUNT ONE

## RACE DISCRIMINATION – TITLE VII

16. Plaintiff adopts, realleges and incorporates by reference paragraphs one through fifteen above, the same as if more fully set herein, and further alleges anew.

17. In taking the above described actions, Defendant intentionally discriminated against Plaintiff on the basis of his race when Plaintiff was not allowed to evaluate his employees as Bedford was; not provided adequate computer training as Bedford was; not allowed to use the "temp" service to fill positions as Bedford was; not allowed to use the same restroom as white supervisors were; not

allowed to use the scanning equipment as Bedford was; not allowed to leave work after eight (8) hours and be assisted by his lead person as Bedford was; not allowed to use the conference room as Bedford and other white supervisors were; not promoted to day shift supervisor, and terminated for carrying out the instructions of management.

18. As a proximate consequence of the violations of Title VII based on race by Defendant, Plaintiff has suffered and will continue to suffer damage to his professional life and current and future career opportunities. Further, Plaintiff has suffered future pecuniary losses, emotional pain, inconvenience, mental anguish, loss of enjoyment of life and non-pecuniary damages.

## Damages

19. As a direct and proximate result of violations of Federal Statutes of the United States Constitution, Plaintiff suffered the following injuries and damages:

   a. Psychological pain and suffering, mental anguish and emotional distress in the past and future;

   b. Loss of society.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Honorable Court grant the following:

(a) Assume jurisdiction over this action;

(b)   A judgment declaring that Defendant violated 28 U.S.C. Sec. 1331 and 42 U.S.C. Sec. 2000(e);

(d)   All backpay and fringe benefits as a result of the discrimination with interest;

(e)   Attorney's fees;

(f)   Costs;

(g)   Prejudgment interest;

(h)   An award of such compensatory damages for any loss of wages, and loss of benefits, including, but not limited to, retirement pension benefits, mental anguish, emotional distress, and embarrassment, both past, present and future to which Plaintiff may be entitled; and such further, other and different legal or equitable relief as the Court may deem appropriate or which he may be entitled, and

(i)   Punitive damages.

## Jury Demand

Plaintiff demands trial by jury on each and every cause of action.

Respectfully submitted,

_____
Juraldine Battle-Hodge (BAT033)


**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL CLAIMS SO TRIABLE.**

_____
OF COUNSEL


**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL RETURN RECEIPT REQUESTED**

9

```
Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602000398
Cashier ID: cstrecke
Transaction Date: 09/11/2007
Payer Name: JURALDINE BATTLE HODGE PC
-------------------------------------
CIVIL FILING FEE
 For: JURALDINE BATTLE HODGE PC
 Case/Party: D-ALM-2-07-CV-000817-001
 Amount:         $350.00
-------------------------------------
CHECK
 Remitter: JURALDINE BATTLE HODGE PC
 Check/Money Order Num: 1684
 Amt Tendered: $350.00
-------------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00
```

DALM207CV000817-MEF

MCGHEE V AMERICOLD LOGISTICS

JURALDINE BATTLE HODGE PC

207 MONTGOMERY STREET STE 215

MONTGOMERY, AL  36104